and the Bienville Broads, LLC. Mr. Swofford, you may proceed with your argument. I've called the case. Thank you. Good morning, Your Honors. Gregory Swofford for the Plaintiff Appellant Christopher Ivan Lund. Your Honors, this matter started out in the District Court as a declaratory judgment action. The declaratory judgment action was based upon what we believe was the lack of pre-sale notice. In 2015, Louisiana tax sale law recognized absolute nullities based upon a lack of pre-sale notice. In 2015, the Louisiana Legislature amended Louisiana tax sale law to eliminate the availability of an absolute nullity, even in the instance where there was no pre-sale notice. The Legislature rationalized that because there was no deprivation at the time of the tax sale, meaning that the property was not being sold. Under the new regime, the property is not being sold when the deed is issued. There is only an interest being sold in the property subject to redemption. The Legislature reasoned that since there was no deprivation at the time of the issuance of the deed, then pre-sale notice was subordinated to what is described now as post-sale notice. Under the Louisiana tax sale regime, there are only relative nullities that can be observed. In this particular matter, Your Honors, it is not in the state court. Right. Didn't the state court deny your motion for absolute nullity of quiet title? The state court denied the motion for absolute nullity, Your Honor, pretty much without any consideration based upon the fact that the new regime says that absolute nullity was not available. The state trial court judge specifically said that because absolute nullity is not available, we don't even have to consider it, and it doesn't matter what the redemption periods were. As the state appellate court mentioned, you didn't appeal that determination from the state trial court, did you? Well, that's what the opinion says, Your Honor. Did you appeal it? Well, not directly, but under the Louisiana law, Your Honor, the appeal of a motion for a new trial appeals the underlying decision as well. The appellate court said, hey, you didn't appeal it, but it's basic under Louisiana law, under a motion for a new trial, the underlying decision is also being appealed. It's just that it didn't get treatment in the appellate court decision. I was going to say, aren't you attempting to attack the state court denial of your motion for absolute nullity? And don't you have what we would call a Rooker-Feldman problem with that? Because we would have to set aside the underlying state decision wrong that has not been fully pressed in the state court, or even if it had been fully pressed, there's a final state decision on it? Well, I'm sorry. No, that's the question. How can we review that? Because we would have to set aside the state court decision on it. Well, we're not asking, the district court suit was not to challenge the decision that was rendered by the state court. The district court suit was asking the court to declare the unconstitutionality of the regime that subordinated pre-sale notice to post-sale notice. And under Rooker-Feldman, Rooker-Feldman specifically accepts from the doctrine where the challenge is made to a state statute, albeit that that state statute had been decided or interpreted by the state court adversely against my client, Mr. Lund, in this instance. So we certainly believe, Your Honor, that we fit under the Rooker-Feldman exception, one of them anyway. In the second instance under Rooker-Feldman, Rooker-Feldman also looks to the source of the injury. What we believe is that not only was there not pre-sale notice, but there was not post-sale notice given by the adverse party, Coastal, who was the tax sale purchaser, and the City of New Orleans, who was in charge with administering the tax sales. So we believe that under those two scenarios, Your Honor, Rooker-Feldman does not bar our declaratory judgment action. Okay. Thank you. Well, the district court decided this on res judicata. And so I guess I'd like you to point out what was wrong with the analysis of the he walked through the res judicata elements under Louisiana law and found them met. So what's wrong with what the district court did? The problem, Your Honor, the problem, Your Honor, with the decision from the district court was that, one, as you well know, under Louisiana preclusive doctrine, the judgment had to be valid, had to be final, the parties had to be the same, all of those things. We challenged the valid and final portion of it. Okay. Well, there's no question it was final. I mean, it was final judgment. It went up on appeal. It was denied Brits by the Louisiana Supreme Court. That's final, right? Well, Your Honor, yes. But the validity, we raised Okay, so validity is different. So why wasn't it valid? That's the issue that we raised and pressed with the district court judge, that it was not a valid judgment. And in order to determine whether or not res judicata in this instance was applicable, that there had to be at least a hearing on the merits on those issues prior to getting to the determination of whether or not res judicata even applied. As Your Honor's well know, that in a diversity action, the preclusion law of the state, Louisiana, applies. Louisiana has an exception to res judicata specifically within the context of tax sales and absolute nullity. We've cited to the case of Sutter v. Dane, R&N Earthslides, Chase v. Weblin. Chase v. Weblin was a Louisiana Supreme Court case that came back and said that it would not touch the decision in Sutter v. Dane. In Sutter v. Dane, tax sale was quiet. So the Louisiana courts adjudicated this, right? They just disagreed with you on this point. I'm sorry, Your Honor. The Louisiana state courts adjudicated this issue of absolute nullity based on an alleged lack of notice, and they disagreed with you, right? There has been no pronouncement on the issue of absolute nullity. No, but they disagreed with you on the validity of the, I mean, they disagreed with you with respect to these notice issues. Did not Judge Johnson say that she disagreed with you? No, she didn't, because no one has ever gone to the merits on that issue. It was dismissed based upon the fact that Louisiana revised statute title 472286 says that absolute nullity no longer exists in Louisiana. The statute does exist. I know you say it's unconstitutional, but the statute does say that, right? Yeah, the statute does say that, and that was the basis for our action in the district court to get some clarity on that issue, for there to be a declaration on whether or not that statute is actually constitutional and whether or not a plaintiff, a tax debtor, can urge the lack of pre-sale notice in a tax sale in Louisiana. Okay. I guess that maybe that just brings me back to Judge Elrod's initial point, which is, okay, the Louisiana courts said, well, there's not an absolute nullity. They denied your motion. You filed something called a motion for absolute nullity of quiet title. It was denied partially on the basis of this statute, and now you want us to, you want to revisit that here. You want us to say that we're wrong. I would not characterize it like that, Judge Duncan. What we're saying is that we're entitled to a declaratory judgment on the issue of the constitutionality of that statute. We didn't go into the district court alleging that the state court was wrong, that the judgment was wrong. We never said that. We only said that we wanted determination on the constitutionality of whether or not pre-sale notice still exists, and here's the confusion, Your Honor. Did you raise that claim in the state court in your motion for absolute nullity? No. We did not raise the issue of the constitutionality of the statute in the state court, but here's the confusion for us and for a lot of other plaintiffs, I would imagine, Your Honor, because despite that statute, despite Title 47-2286 saying that only relative nullities exist in the state of Louisiana, the court still recognized absolute nullities. So there's that confusion there about that issue. That may be confusing, but that's their problem. I understand. That's not my problem. I don't know what Louisiana courts do. I mean, why wouldn't this have been the right place to do is to take this up with the Louisiana Supreme Court? Well, because, again, Your Honor, even though there was a judgment in the Louisiana courts, we still believe that we're entitled to come into federal court and raise the issue on the constitutionality of the statute. We're not attacking the validity of the state court judgment from that standpoint, even though a determination on the constitutionality may adversely impact that decision. But that's not how we came to the federal district court. I mean, does your case here depend on the allegation that there was no notice of the tax sale? Our case here— And importance to the state? No. Our case here does not depend on that because the constitutionality of the statute does not depend on the validity of this particular tax sale. Okay. So it doesn't matter whether—I mean, I thought your view was he received no notice. Well, that is factual. Well, and yet I look at Judge Fallin's opinion and it says, Coastal alleged that Lund received notice of tax sales in 2015, 2017, 2018, with green cards having been signed and returned to the city. You know, affidavits from the process server that notice was served. Those are all factual claims by my opposing—the opposing side, Your Honor. We differed with those in the state court. We never got to those issues in the district court, though. Your complaint says—your client's complaint says that he received no notice, but it also points out deficiencies in notice. So is your client alleging that there was a complete lack of notice or that the notice he received was inadequate? That there was a complete lack of notice, Your Honor. That's the allegation of my client. Then why does the complaint talk about irregularities in the notice? How can you have both? If there's no notice, how do you know what's irregular about it? We didn't really—the irregularities, if that was phrased in that way in the complaint, was the fact that there was actually no notice. Because we weren't attacking the tax sale itself or the judgment of validity, we didn't really go into the deficiencies, per se, of the notice, other than the fact that they did not exist. There are some factual things that are not relevant here, but . . . Thank you. I believe we have your argument, sir, and you've saved time for rebuttal. We'll hear the other argument. Thank you. Good morning, Your Honors. Kyle Scalfani on behalf of the Apelli Coastal Development Group and Banneville Broads. As the court quickly reached the issue here, the plaintiff seems to be alleging that his due process rights were infringed, and there's this issue of pre-sale and post-sale notice that they've now tried to raise at the district court level. As the lower court found, that due process argument existed when Mr. Lund filed his answer, as will appear from the record, he raised that issue in his answer as an affirmative defense. He alleged a failure to send notices required by law. The state court made a factual finding that Fannie Mae was duly notified of the tax sale, and that the redemptive period had passed. So that notice question had been addressed at the state court level. But significantly, as Judge Duncan asked, the motion for absolutenality was raised at the state court level, and my opponent focused primarily on whether or not an 18-month versus a 3-year redemptive period applied, and raised the issue of whether the filing of that answer interrupted redemption. That was the time to raise pre-sale, post-sale notice, to argue that absolutenality law still applies despite what the statute might say. If he disagreed with it, that was the time to put it in front of a judge in the state court proceeding and have it considered. Not only did he not put that in front of Judge Johnson, but he didn't bother to appeal the motion for absolutenality that was denied by the Fourth Circuit. That formed the basis of this res judicata that we filed at the district court level, because it's clear in this circuit and under the transaction test that any and all of those types of claims should have been raised, could have been raised, and have now been extinguished based upon the state court proceeding being a final judgment. What do you do with his argument that the facts of this case don't matter at all for the argument he's trying to make, which is a grand constitutional argument that the statute is unconstitutional? And so what do you do with that argument? Well, Your Honor, the question of whether or not a hearing was needed, he needs a hearing in the federal court. Well, the time for that hearing would have been in state court, first of all. And if it's a constitutional issue, that kind of folds into the Rooker doctrine. I initially looked at this, and based off of Fifth Circuit jurisprudence, it appeared that there was an attempt to re-litigate issues that had already been determined, which put us in the world of res judicata. But even though my opponent says they're not doing that, they are essentially seeking to ask this district court to consider a constitutionality question. And I think that does kind of begin to fit into Rooker-Feldman. One of the first concepts of that inquiry is what is the federal court being asked to in 2013 has a really good analysis of how that doctrine might apply to this kind of question. And the fact that a state, a person that loses in state court can't invite a federal district court to review a state court decision by asserting a constitutional claim. I mean, that does put it, I believe, within the Rooker-Feldman doctrine. So to your question, Your Honor, I think if they're asking for a constitutional review by the federal district court of the state court's interpretation on the question of constitutionality, that does put them into Rooker, and there's no jurisdiction there. Your Honors, aside from that, I think that, you know, just generally the lower court got it right. The judgment's valid, final. The parties are the same. Clearly, res judicata bars all claims that could have been advanced. It's on all fours with the transactional test that applies in this court, in this circuit. It's clearly the same nucleus of operative facts. And to the extent the court needs to look to Rooker, I think that it could also apply to this attempt at challenging the constitutionality of a statute and asking a federal district court to do that. It's not appropriate. And I'd be happy to answer any questions the panel may have. I think we have your argument. Thank you, Your Honors, for your time today. Thank you. Mr. Swafford? Your Honors, real brief. I would just like to point the court's attention to Skinner, United States Supreme Court, Skinner v. Switzer, which says that Rooker does not bar federal plaintiffs' constitutional challenge to a state statute after the state court has rendered an adverse decision. On the issue of the res judicata, the Sutter v. Dane, Chase v. Weblin, R&N Ursuline cases, all of those cases were final judgments on their face and from all practical standpoint. The suits to annul those cases were brought in some instances a year after the judgments were signed and final. Yet, the Court of Appeals and the Louisiana Supreme Court both came back and said that where the validity of the judgment is called into question on procedural due process grounds, res judicata does not apply, and there must be a determination on the validity of those judgments. Mr. Swafford, just so I can understand, your federal complaint is in part saying that the Louisiana tax notice statute is unconstitutional, right? That is correct, Your Honor. It violates due process. But the factual scenario that you're alleging here is the same one that was litigated in the state courts, right? In other words, that's where the constitutional claim is arising out of that same factual transaction. Do you agree with that? I do agree with that, and that's one of the issues that we took with Judge Fallin's opinion because Judge Fallin basically says that because this came out of the same nucleus of operative facts, then it's res judicata. But that's totally against what the Issue Preclusion Law of Louisiana says. I thought that was one of the elements of Issue Preclusion that would come out of the same transaction. I didn't even think you were contesting that part. Well, it is a part of Louisiana law. But again, as I've stated— It's not here, right? It's the same transaction. Pardon me? Same transaction. Yes, exactly. And that is the same thing that in the Louisiana state courts that those appellants were met with on the res judicata. It was alleged that it should have been dealt with previously because it all came from the same operative facts, namely the tax sale. But the court did not go along with that. The court said where there are procedural due process issues, where it is called into question, the court has to look at that and determine whether or not that procedural due process violation exists before the court can get to applying res judicata. And that did not happen in the state court, nor did it happen in the district court here. The issue was summarily dismissed in the state court based upon the revised tax sale regime and in the district court based upon the fact that the judge believed that it arose under the same facts and circumstances. It wasn't just the revised tax regime. It was also the fact that you didn't appeal the issue to the Court of Appeals in Louisiana, wasn't it? Well, we did appeal, Your Honor. Again, the issue of the absolute nullity wasn't addressed. But even if that issue was not raised, it does not bar the claim in federal court on the constitutionality of the statute, even if it wasn't raised. We're still entitled to an action in federal court and a determination on that issue. Okay. Do you have anything further? Okay. Thank you so much, Your Honors. Thank you. Thank you. We have your arguments, Mr. Swafford, Mr. Slafani, and Mr. Brown.